JACOB LICHTENSTEIGER v. STATE OF NEBRASKA.

FILED MAY 23, 1911. No. 16,990.

Food: PURE FOOD LAW: COTTOLENE. A proviso in a statute is gen-erally intended to except something from its operation which would otherwise be within its provisions. Under the pure food law of 1909, a package of cottolene, if sold for use in Nebraska, must bear a statement on the label of the net weight or measure of the contents exclusive of the container, unless it contains the other brands and marks upon the label provided for in the first or second subdivisions of the proviso to section 8, ch. 33, Comp. St. 1909 (Ann. St. 1909, sec. 9825).

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Reversed.

T. J. Mahoney and J. A. C. Kennedy, for plaintiff in error.

Grant G. Martin, Attorney General, and Frank E. Edgerton, contra.

LETTON, J.

Plaintiff in error was convicted of selling a misbranded can of cottolene. The case was tried by consent upon an agreed statement of facts. From this statement it appears that the pail or can of cottolene had no statement printed or written on the label of the net weight or measure of the contents exclusive of the container; that the

cottolene was manufactured by the N. K. Fairbank Company at Chicago, was sold with other like packages in wholesale quantities to a wholesale grocer in Lincoln, by this grocer in like quantities to defendant, and by the defendant to another person as a retail sale. That the word "cottolene" is a name adopted by the manufacturers as the distinctive name of a compound, and that cottolene is a proprietary article manufactured by said N. K. Fairbank Company which is not an imitation of or offered for sale under the distinctive name of any other article; that cottolene is a mixture or compound composed of cottonseed oil and beef fat and no other substance, and does not contain any added poisonous or deleterious ingredients; that on the outside of the package, among other matters, is set forth the name, the place of manufacture, the words, "Cottolene, Cottonseed Oil—Oleo Stearine," and on the side of the pail, among other printed matter, the following: "Cottolene contains nothing but pure vegetable oil and choice pressed beef fat, prepared by our exclusive methods;" that for many years past cottolene has not been sold by weight or measure, or in packages intended to pass as or for any fixed or given weight or measure, and that the package sold by the defendant was not sold as containing any fixed weight or measure, but was sold simply as a pail of cottolene.

1. The same contention is made in this case with respect to the statute being in violation of the fourteenth amendment of the constitution of the United States as is made in *Freadrich v. State, ante,* p. 343, and on this point the case is ruled by the opinion therein.

2. Plaintiff in error insists that under a proper interpretation of the statute the package of cottolene sold was not "misbranded," for the reason that while the third subdivision of the first paragraph of chapter 67, laws 1909 (Comp. St. 1909, ch. 33, sec. 8; Ann. St. 1909, sec. 9825), provides that articles of food shall be misbranded: "Third. If sold for use in Nebraska and in package form, other than canned corn; if every such package, as provided

and named below, does not bear a correct statement clearly printed on the outside of the main label, of the contents and also of the net weight or measure of the contents exclusive of the container, viz., all dairy products, lard, cottolene, or any other article used as a substitute for lard, wheat products, oat products and corn products and mixtures, prepared or 'unprepared; sugar, syrup and molasses, tea, coffee, canned, dried fruit," still that by a later general proviso in the same section it is "provided that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases: First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not an imitation of, or offered for sale, under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced, and the ingredients composing said food. Second. In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale, and the ingredients composing said articles."

It will be seen that the statute first includes "cottolene" among the class of articles which are to be deemed "misbranded" unless the weight or measure of the net contents is printed on the label, but afterwards provides that an article of food which does not contain any added poisonous or deleterious ingredients, if a mixture or compound sold under its own distinctive name, and not an imitation of, or offered for sale under the distinctive name of, another article, if the place of manufacture and the ingredients composing the food accompany the name on the label, and compounds, if labeled so as to plainly indicate that they are compounds, and the ingredients composing the articles

are also plainly indicated on the label, "shall not be deemed to be misbranded." By the agreed statement of facts it is shown that the label fully complied with the requirements of the proviso as to the class described in the first subdivision. It is difficult to say what the legislature intended by requiring in one portion of the section that packages of cottolene should be deemed misbranded if sold without a statement of the weight or measure on the outside of the container, and by later providing that the class of food products within which cottolene plainly belongs should not be deemed misbranded if put up in packages with the identical information printed on the label which the pail of cottolene sold bore on its label. Reference to other products named in the same section rather increases the uncertainty than clarifies the meaning. The same provision is made with reference to wheat products, oat products, and corn products and mixtures. It is a well-known fact, of which we think we are justified in taking judicial notice, that many wheat products, oat products, and corn products and mixtures are upon the market in package form under distinctive names, and complying with the first subdivision of the proviso. If the proviso is held not to apply to the third subdivision of section 8, all such articles, compounds or mixtures, though sold as preparations under their own distinctive names and apparently intended to be exempted, must be branded with the net weight or measure of the contents of the package.

What is the effect of the proviso? "A proviso is something engrafted upon a preceding enactment, and is legitimately used, for the purpose of taking special cases out of the general enactments, and providing specially for them." Dwarris (Potter), Statutes and Constitutions, p. 118. "The proviso is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or, in some measure, to modify the enacting clause." *Wayman v. Southard,* 10 Wheat. (U. S.) 1. *Voorhees v. Jackson,* 10 Pet. (U. S.) *449; 2 Sutherland (Lewis), Statutory Construction (2d

ed.) sec. 351. Under these principles we must hold that the proviso controls the preceding provision. Section 251 of the criminal code provides, among other things: "No person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against its spirit." This being the law, we cannot say under the contradictory provisions of the pure food statute that the selling of such a package of cottolene as described in the evidence is made penal by the plain import of the words of the statute. Under the law of 1909, a package of cottolene, if sold for use in Nebraska, must bear a statement on the label of the net weight or measure of the contents exclusive of the container, unless it contains the other brands and marks upon the label provided for in the first or second subdivisions of the proviso. The stipulation of facts shows that the label complies with all the requirements of the first subdivision of the proviso, and, this being so, the statute declares: "It shall not be deemed to be adulterated or misbranded." This is the meaning the legislative department of the government has given to this statute. The legislature of 1911 perceived the confused, contradictory, and ineffective character of these provisions, and amended this section so as to require the net weight to be placed on packages of compounds and mixtures, as well as on packages of unmixed products.

Taking the 1909 statute as we find it, we are convinced the evidence does not support the conviction. The judgment of the district court is

REVERSED.

FAWCETT and ROSE, JJ., not sitting.